IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ABN AMRO MORTGAGE GROUP, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.   2:06-cv-4826-TMP |
| PAUL WARREN, et al., | ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This matter is before the court on the motion for summary judgment filed by plaintiff ABN AMRO Mortgage Group, Inc., on November 9, 2007, seeking entry of judgment as a matter of law against defendant Paul Warren. Although represented by counsel, the defendant has not filed any argument or evidence in response. The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).[1] Having reviewed the arguments, evidence, and pleadings in this matter, the undersigned finds that the motion is due to be granted.

PROCEDURAL HISTORY

The plaintiff, ABN AMRO Mortgage Group, Inc. ("ABN"), filed the complaint commencing this action on December 12, 2006, and amended its complaint on May 21, 2007. The dispute arose

---

[1] Another defendant, Sandy Moran, has never appeared in this action and default was entered against her. She has not consented to the § 636(c) jurisdiction of the magistrate judge, but plaintiff and defendant Warren have. Inasmuch as this motion for summary judgment relates only to Warren, the magistrate judge can exercise dispositive jurisdiction over it.

from a mortgage executed by defendant Sandy Moran, defendant Paul Warren's wife, to secure a loan she received from plaintiff. The mortgage is on a piece of property claimed by Warren, but which plaintiff asserts was deeded to Moran several years prior to the execution of the mortgage at issue. Plaintiff now contends that the mortgage is in default and seeks to foreclose on the property. The amended complaint seeks equitable subrogation to the lien of a first mortgage, declaratory relief pursuant to 28 U.S.C. § 2201 (a), and a judgment against the mortgagor for the full amount due under the plaintiff's note.

Defendant, Paul Warren, filed his answer on May 22, 2007, one day after plaintiff filed its amended complaint. Defendant's answer was in response to plaintiff's complaint rather than its amended complaint, and defendant has failed to file an answer in response to plaintiff's amended complaint. Therefore, pursuant to Federal Rule of Civil Procedure 12 (a)(1)(a), defendant's answer stands as his sole response to plaintiff's complaints, denying the material allegations of the complaint.

On November 9, 2007, plaintiff filed a motion for summary judgment. Although the court entered a scheduling order for briefing the motion, defendant Warren has not filed any response to date.

SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." F.R.C.P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting F.R.C.P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting F.R.C.P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is

entitled to judgment as a matter of law. F.R.C.P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

FACTS

The facts, viewed in the light most favorable to the non-movant, in this case the defendant, Warren, are as follows:

The plaintiff and defendant are in dispute arising from the May 2005 mortgage transaction involving ABN and defendant Moran. (Amended Complaint ¶ 2.)  In September of 2004, while Warren was confined in jail (Answer ¶ 12), a deed was executed conveying Warren's property located at 4879 Riverbend Road, West Blocton, Alabama, to his then-girlfriend, Sandy Moran. (Moran Aff. ¶ 4.)  Although Warren denies any knowledge of it, Moran testified by affidavit that Warren instructed her to sign his name as grantor to the deed conveying the property to her so that she could then mortgage property and borrow money to post bail for Warren's release from jail. (Moran Aff. ¶ 4-6.)  Moran did so, signing the deed "Paul Warren," apparently before a notary public, conveying the property from Warren to her.  She then executed a mortgage in favor of Wells Fargo on September 30, 2004, securing a loan in the amount of $87,768.95. (Moran Aff. ¶ 5.)  The proceeds of the loan were used to post Warren's bail and to pay off Warren's car loan, credit card debt, a previous mortgage he had on the property, and other debts Warren owed.  Id.  Warren told Moran to keep the remaining $500 for grocery money.  Id.  Warren admits that he was aware that his bail was posted and that certain of his debts were paid off by Moran, although he denies knowing how she did it. (Depo. of Paul Warren, p. 33).  He also admits that he was aware that Moran paid the taxes and insurance on the property and collected rent from tenants on the property. (Id. at 88-89, 93).  Moran also made the payments on the Wells Fargo mortgage. (Id. at 109).

On May 13, 2005, Moran refinanced the Wells Fargo mortgage with a loan from plaintiff (Moran Aff. ¶ 7) in the amount of $97,750.00. (Pl.'s Mot. Summ. J., Ex. E.)  Warren and Moran were living together in Moran's trailer, and Warren was present when the loan officer visited Moran at their residence to have the loan documents executed.  Warren knew Moran intended to refinance the Wells Fargo mortgage with a loan from plaintiff.  Warren confronted the loan officer, telling him that Moran did not own the property, but that he owned it, and that her claim of ownership was a "fraud." (Warren Dep. at 109-118.)  Warren then left, and he has never asked Moran whether she signed the mortgage.

Warren and Moran were married on September 12, 2005, and they continue to live together as husband and wife.  Warren became aware that Moran claimed title to the property following her execution of the mortgage and took no action to contest Moran's title or the validity of the 2004 deed by which title was conveyed to Moran. (See Warren Dep. and Moran Aff.)  Warren now asserts he never conveyed his property to Moran and Moran's conveyance was a fraud.  (Answer ¶ 11.)

Moran defaulted under the terms of plaintiff's mortgage, and plaintiff published notice that a public sale of the property would be held.  (Pl.'s Mot. Summ. J., Tab H.)  In response to that notice, Warren's counsel sent a letter to ABN, dated October 23, 2006, claiming that the deed conveying the property to Moran is a forgery, that Warren is the true owner of the property, and that plaintiff's 2005 mortgage is not valid against the property.  Id.  As a result, the foreclosure sale was postponed, and plaintiff filed this lawsuit on December 6, 2006.  (Complaint.)

On July 9, 2007, [plaintiff] served Warren with Plaintiff's First Combined Discovery Requests.  After receiving no response and fulfilling the requirements of Rule 37 of the Alabama

6

Rules of Federal Civil Procedure, [plaintiff] filed a motion requesting that the court compel Warren to respond to the discovery requests. On November 27, 2007, the court granted [plaintiff's] motion, giving Warren ten days to respond. Warren failed to respond to the discovery requests and has not to this day produced any document requested nor responded to any of the requests for admissions. The requests for admissions, which must be deemed admitted, include the following statements:

> 1. That in the fall of 2004, Warren told Sandy Moran to borrow money to post bail for his release from the Bibb County, Centreville, Jail.
>
> 2. That Warren told Sandy Moran to sign his name as grantor to a deed conveying the subject property to her.
>
> 3. That Warren told Sandy Moran to sign his name as grantor to a deed conveying the subject property to her so that she could take out a mortgage on the property.
>
> 4. That the proceeds of the Wells Fargo loan obtained by Sandy Moran were used to post bail for Warren's release from the Bibb County, Centreville, Jail.
>
> 5. That the proceeds of the Wells Fargo loan obtained by Sandy Moran were used to satisfy other debts owed by Warren.
>
> 6. That in May of 2005, Warren knew that Sandy Moran intended to refinance the Wells Fargo mortgage with a loan from ABN AMRO Mortgage Group.

DISCUSSION

The central issue addressed in this action is whether the mortgage executed by Sandy Moran in favor of plaintiff is a valid and binding lien on property claimed by Warren, so that plaintiff may foreclose it to secure the unpaid debt owed it by Moran. As recited above, it is undisputed that Sandy Moran signed Paul Warren's name to a warranty deed purporting to convey the Riverbend

Road property from him to her in September 2004.[2]  One question is whether that conveyance was legitimate or a fraud.  Warren admits that he instructed her to do so and that he benefitted from the proceeds of the mortgage loan Moran subsequently secured with the property.

In this action, plaintiff relies upon theories of ratification and equitable estoppel to contend that its mortgage on the property is a valid lien.  By doing so, it appears that plaintiff does not attempt to assert that the actual deed of conveyance is valid under Alabama law.  Although it well may be asserted that Moran had the actual authority as Warren's agent, acting upon his express instructions, to sign the deed for him, Alabama Code § 35-4-20 (1975) requires that the agent act with "written authority" to execute a deed on behalf of her principal.  There is no evidence that Warren gave Moran "written" authority to sign the deed in his name.  Thus, as a conveyance, the deed appears to be invalid to remove title from Warren and vest it in Moran.  Below, the court will address whether ratification and equitable estoppel compel the conclusion that Warren's property still is subject to the lien of the mortgage.

---

[2]  The court notes, however, that, although Moran now admits that she signed Warren's name to the deed at his instruction, a notary public executed a statutory acknowledgment on the deed, indicating that Warren (not Moran) actually signed the deed in her presence.  This conflict is not otherwise explained by the evidence.  If it is true, as shown on the face of the deed, that Warren signed the deed and acknowledged his signature to a notary public, it would appear to be a valid warranty deed, sufficient to convey title to Moran.  Nevertheless, plaintiff does not make this argument, relying instead on ratification and equitable estoppel theories to seek enforcement of the mortgage lien.  Plaintiff apparently concedes that the acknowledgment on the deed is a fraud.

A. Effect of Unanswered Requests for Admissions

A threshold question presented is how are the requests for admissions, left unanswered by the defendant, treated in light of his deposition testimony. As noted above, defendant testified adamantly in deposition that he did not instruct Moran to sign the deed conveying the property to her nor was he aware of it until she refinanced the Wells Fargo mortgage with plaintiff. Nevertheless, plaintiff submitted to defendant Warren, through defendant's counsel, a set of requests for admissions that he then failed to answer, object to, or otherwise respond to. Set out above, these requests, taken as admitted, establish that (1) Warren instructed Moran to sign the deed for him to convey property to her, (2) Moran mortgaged the subject property to obtain money for Warren's bail and pay Warren's debts, and (3) Warren was aware of Moran's intent to refinance the Wells Fargo mortgage through a new loan from plaintiff. Plainly, the admitted requests for admissions conflict with his deposition testimony, and the issue for this court is whether, for summary judgment purposes, the unanswered requests for admissions establish the undisputed facts or whether there is merely a conflict in the evidence that cannot be resolved on summary judgment.

The court concludes that when Warren failed to respond to the requests for admission, Rule 36 mandated that the admissions "conclusively" established those facts, notwithstanding contrary testimony in Warren's deposition. Rule 36(a)(3) states, "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Further, Rule 36(b) requires:

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

Taken together, these provisions of Rule 36 clearly mandate that admissions made by failure to respond "conclusively establish" the facts so admitted. Facts "conclusively established" are not subject to dispute for purposes of Rule 56 summary judgment. As the Eleventh Circuit Court of Appeals explained in <u>United States v. 2204 Barbara Lane</u>, 960 F.2d 126 (11th Cir. 1992):

> Here, the district court properly found no genuine issue as to a material fact because "the facts [were] not in dispute." (R2-42:2). Federal Rule of Civil Procedure 36:
>
>> expressly provides that requests for admissions are automatically deemed admitted if not answered within 30 days, and that the matters therein are 'conclusively established' unless the court on motion permits withdrawal or amendment of the admissions. The rule is designed to expedite litigation, and it permits the party securing admissions to rely on their binding effect.
>
> <u>Rainbolt v. Johnson</u>, 669 F.2d 767, 768 (D.C.Cir. 1981) (reversed district court because it failed to give binding and conclusive effect to unanswered requests for admissions). Roberts never responded to the government's requests for admissions, thereby admitting that he used the property to facilitate illegal drug trafficking. Although the summary judgment order itself did not expressly refer to the unanswered requests for admissions, the facts were undisputed only because Roberts failed to respond to the government's requests. The unanswered requests served as the "admissions on file."

* * *

> The Advisory Committee on Rules emphasized the importance and effect of requests for admissions in its notes accompanying the 1970 amendment to Rule 36:
>
>> In form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than an evidentiary admission of a party. Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the very purpose of the rule is defeated.

Id. at 129-130. Thus, admissions made by failure to respond to requests for admissions, properly served under Rule 36, constitute "admissions on file" in the nature of a stipulation of evidence at trial. The *facts* so admitted are "conclusively established," meaning that they are no longer "in dispute" for purposes of Rule 56, even though other evidence may suggest the contrary. Indeed, in United States v. Kasuboski, 834 F.2d 1345 (7th Cir. 1987), the Seventh Circuit Court of Appeals held that merely because the factual subjects of unanswered requests for admissions were explored in other discovery did not change the conclusion that the failure to respond to the requests for admissions "conclusively established" the facts admitted. The court said:

> The district court's decision to grant the government's motion for summary judgment was predicated on the facts deemed admitted by Kasuboski's failure to respond to the request for admissions. Rule 36(a) of the Federal Rules of Civil Procedure clearly provides that a party must answer each matter for which an admission is requested within 30 days or the matter is deemed admitted. [Footnote omitted] Charles Kasuboski never responded to the government's request.
>
> On appeal, the defendants offer two explanations for Charles' failure to respond. First, they argue that a response was not necessary because the same questions raised in the request for admissions were asked and answered in the depositions that took place both before and after the date they received the request for admissions. The defendants misinterpret Rule 36. The use of an alternative form of discovery does

> not eliminate the requirement that a request for admissions be answered within 30 days. See Mangan v. Broderick and Bascom Rope Co., 351 F.2d 24 (7th Cir. 1965) (unanswered requests are not abandoned by the subsequent filing of interrogatories addressed to the same subject). Although there may be some overlap in the information requested in the various forms of discovery, parties are not allowed to pick and choose when to respond based on their own determination of whether they have previously answered the questions presented. Kasuboski's participation in depositions does not excuse his failure to respond to the request for admissions.

Id. at 1349; see also Brook Village North Associates v. General Electric Co., 686 F.2d 66 (1st Cir. 1982) (party has a right to rely at trial upon admissions made by failure to respond to requests for admissions); Conlon v. United States, 474 F.3d 616 (9th Cir. 2007) ("Unanswered requests for admissions may be relied on as the basis for granting summary judgment.").

The court notes that Warren was served with plaintiff's requests for admissions, through counsel, on July 9, 2007. Having not received a response to the requests for admissions, plaintiff's counsel filed a motion to compel responses on August 29, 2007, after having written to Warren's counsel two weeks earlier. After giving Warren twenty days to respond to the motion to compel, the court granted the motion on September 27, 2007, directing that Warren provide responses to the discovery requests within ten days. He still failed to do so. Despite the many opportunities Warren was given to deny the requests for admissions, he never has filed any response or motion seeking to withdraw the admissions by default.

Therefore, pursuant to the clear mandate of Rule 36, the court will deem the facts admitted by Warren's failure to respond to the requests for admissions to be "conclusively established" for purposes of Rule 56. Notwithstanding any testimony to the contrary he may have given in his

deposition, Warren's failure to deny the facts covered by the requests for admissions conclusively establishes those facts as not disputed.

### B.  Estoppel by Ratification

The plaintiff asserts that "[b]y accepting the benefit of the loan proceeds with knowledge that the loan was obtained by virtue of the deed signed by Moran, on his behalf and under his authorization, Warren ratified the conveyance." (Pl.'s Mot. Summ. J. ¶ 6.)  "A ratification occurs when a principle retains the benefits resulting from his agent's unauthorized act with knowledge of the material facts surrounding the transaction."  CIT Financial Services, Inc. v. Bowler, 537 So. 2d 4, 5 (Ala. 1988).  Plaintiff correctly cites Tuskegee Institute v. May Refrigeration Co., which states:

> It is an established principle of the law of agency that where a person acts for another who accepts or retains the benefits or proceeds of his efforts with knowledge of the material facts surrounding the transaction, such other must be deemed to have Ratified the methods employed, as he may not, even though innocent, receive or retain the benefits of, and at the same time disclaim responsibility for, the measures by which they were acquired.  This general principle applies, for example, to an unauthorized contract effected, an *unauthorized sale or lease of property* made, or *an unauthorized loan procured on behalf of the principle or purported principle*.  If the agent procures a contract by fraudulent or corrupt practices, although the principle has not been privy in any way to such conduct of his agent, yet by claiming the benefit of the contract, he must take it tainted as it may be with such practice. [Emphasis added].

344 So. 2d 156, 158 (Ala. 1977) (quoting 3 Am. Jur. 2d, Agency, § 175, pp. 560-61); see also North American Life Insurance Co. of Chicago v. Collins, 185 So. 375 (Ala. 1938) (Receipt of proceeds of mortgage without objection and without returning proceeds is ratification of the mortgage).

Plaintiff asserts that Warren told Moran to sign his name as grantor to a deed conveying the property to her. (Moran Aff. ¶ 4.) Moran affirms this statement in her affidavit, and defendant has failed to answer this assertion in plaintiff's request for admission. Moran acted as Warren's agent and affirmed Moran's conveyance. It is uncontested that Moran used the loan proceeds of the Wells Fargo mortgage to dispose of Warren's debts. (See Moran Aff. ¶ 5-6; Warren Dep. at 29.) Even if Moran did exceed her authority in signing Warren's name, Warren's actions nonetheless show he ratified the Wells Fargo mortgage subsequent to the purported conveyance. The money Moran acquired from Wells Fargo was used to post Warren's bail and to pay Warren's debts. (Moran Aff. ¶ 6.) Moran acted as Warren's agent, and Warren enjoyed the benefits of the mortgage loan obtained by Moran for more than two years. During these two years, Moran rented the property to obtain additional funds (Warren Dep. at 8-10), refinanced the Wells Fargo loan with the current plaintiff's loan (Warren Dep. at 11-28), and generally assumed responsibility for the property. (See Warren Dep. 6-7.) Warren did not complain that the conveyance was fraudulent until after plaintiff threatened to foreclose. (See Pl.'s Mot. Summ. J., Tab H.).

It would be inequitable for Warren to reap the benefits of the conveyance and, when the conveyance is no longer convenient, claim the conveyance was fraudulent. Warren ratified Moran's use of the Riverbend property to secure two mortgages, the proceeds of which substantially benefitted Warren. Although Warren claims that he told the plaintiff's loan officer that Moran's claim to the Riverbend property was a "fraud," he took no steps after the mortgage was executed to attempt to clear the title to his land. It was only when the mortgage went into default and foreclosure was threatened in October 2006, a year and half after the May 2005 mortgage was executed, that he

raised any dispute about the validity of the mortgage. He admits he did not even bother to ask Moran, with whom he was living, whether she executed the mortgage to plaintiff.

If it is argued that Warren benefitted from and ratified only the Wells Fargo mortgage — the proceeds of which were used to pay his bail and debts — and not the plaintiff's mortgage, plaintiff is equitably subrogated to the lien of the Wells Fargo mortgage. It is undisputed that the ABN AMRO mortgage proceeds were used to pay off the Wells Fargo loan. Further, there is no substantial evidence that plaintiff knew of any claimed defect in Moran's title or ability to mortgage the property. The court believes that Warren's simple statement to the loan officer representing plaintiff that Moran's use of the property was a "fraud," without any further explanation and in light of the existence of the deed apparently conveying the property to Moran, was not enough to put plaintiff on notice that Moran had no authority to mortgage the property. Equitable subrogation has been explained this way:

> The doctrine of equitable subrogation, on the other hand, is a creature of equity, and where money is advanced at the instance of one liable to pay it in order to extinguish a prior incumbrance, and is used for that purpose with the just expectation on the part of the lender, for obtaining security of equal dignity with the prior incumbrance, and for any reason the security taken in the second transaction is adjudged to be defective, the lender or mortgagee may be subrogated to the right of the prior incumbrancer, whose claim he had satisfied, there being no intervening equity to prevent.
>
> * * *
>
> The rule established by the weight of authorities, however, is that one who advances money to discharge a prior incumbrance at the instance of the mortgagor need not exercise the highest degree of care to discover an intervening incumbrance of the title, and mere constructive notice, imputed from the existence of recordation, is not sufficient to preclude him from invoking the doctrine of equitable subrogation in the absence of culpable negligence. He must, however, be ignorant of such intervening incumbrance or right, and cannot shut his eyes and ignore facts brought to his

15

>knowledge, reasonably sufficient to invite diligent inquiry, which, if followed, would result in actual knowledge.

Whitson v. Metropolitan Life Insurance Co., 225 Ala. 262, 142 So. 564, 567-568 (Ala. 1932). Although ABN AMRO may have exercised greater caution in obtaining the mortgage from Moran, plaintiff was not culpably negligent, given the existence of a deed, regular on its face, indicating Moran was the owner of the property, and given the existence of the prior Wells Fargo mortgage. These facts gave plaintiff little reason to question Moran's right to mortgage the property. Warren knew the deed existed; indeed, he instructed Moran to create it. He knew the prior Wells Fargo mortgage existed, and he benefitted from its proceeds. It would now be inequitable to allow him to escape the consequences of his own actions in instructing Moran to create the deed and use it to obtain mortgage money for his benefit. His equities are far less than those of plaintiff in these circumstances. Plaintiff, in good faith, extended credit to Moran based on an instrument Warren caused to be created, and paid the Wells Fargo debt that Warren benefitted from. Warren actively helped create the circumstances under which plaintiff extended credit, and he should now bear the consequences.

Warren is estopped from contesting the validity of plaintiff's mortgage lien on the Riverbend Road property. Based on the evidence submitted by the plaintiff in support of its motion for summary judgment, the motion is due to be granted. Plaintiff is entitled to a judicial declaration that its mortgage on the Riverbend Road property constitutes a valid lien, and that it can be enforced by foreclosure.

CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented and law governing this action, this court determines that plaintiff's motion for summary judgment (court document # 17 ) against defendant Paul Warren on the grounds of ratification and estoppel is due to be granted.  An order granting the motion will be entered contemporaneously herewith.

DATED this 7th day of May, 2008.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE